**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**

**MICHAEL MURPHY**

**VERSUS**

**BOSTON SCIENTIFIC CORPORATION**

**CIVIL ACTION**

**NO. 18-31-JWD-EWD**

## NOTICE

Please take notice that the attached Magistrate Judge's Report and Recommendation has been filed with the Clerk of the U.S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on July 12, 2018.

**ERIN WILDER-DOOMES
UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

MICHAEL MURPHY

VERSUS

BOSTON SCIENTIFIC CORPORATION

CIVIL ACTION

NO. 18-31-JWD-EWD

## REPORT AND RECOMMENDATION

Before the court is a Motion for Leave of Court to File First Supplemental and Amending Petition for Damages (the "Motion to Amend") filed by plaintiff, Michael Murphy ("Plaintiff").[1] Per his proposed pleading, Plaintiff seeks to add additional allegations against defendant, Boston Scientific Corporation ("Defendant"). Defendant opposes the Motion to Amend on the basis of futility.[2] For the reasons set forth herein, the undersigned recommends[3] that the Motion to Amend[4] be **DENIED** as futile.

### I.   Background

On December 13, 2017, Plaintiff filed a Petition for Damages (the "Petition") in state court against Defendant for damages allegedly arising from surgical implantation of an inflatable penile prosthesis ("IPP") manufactured and produced by Defendant.[5] Plaintiff alleges that on or about

---

[1] R. Doc. 18.

[2] R. Doc. 23.

[3] "Generally, a motion for leave to amend the pleadings is a nondispositive matter that may be ruled on by a magistrate judge pursuant to 28 U.S.C. § 636(b)(1)." *Cazares v. Morris*, Civ. A. No. CV-09-2168, 2011 WL 2414543, at *2 (D. Ariz. June 16, 2011) (citations omitted). However, the law is not settled regarding whether a motion to amend involving a futile amendment is a case dispositive motion under 28 U.S.C. § 636. *Compare Hall v. Norfolk Southern Ry. Co.*, 469 F.3d 590, 595 (7th Cir. 2006) (holding that because the magistrate judge's denial of the plaintiff's motion to amend his complaint merely prevented him from adding a defendant, the motion to amend was a non-dispositive matter) *with HCC, Inc. v. R H & M Mach. Co.*, 39 F. Supp. 2d 317, 321 (S.D.N.Y. 1999) (holding that the denial of leave to amend is a dispositive decision at least in situations where the denial is premised on futility of the proposed amendment). Accordingly, the undersigned is issuing a recommendation on the Motion to Amend rather than an order.

[4] R. Doc. 18.

[5] R. Doc. 1-1, p. 10, ¶ 8.

September 26, 2016, an IPP (the "First IPP") was implanted.[6] Plaintiff alleges that in December 2016, he presented to Regional Urology in Shreveport, Louisiana where he complained to Dr. Gerald Henry that the First IPP was not working properly, and that Dr. Henry recommended removing the First IPP and replacing it with a new one.[7] Plaintiff alleges that Dr. Henry "implanted a second IPP, namely an AMS 700 which was manufactured and produced by defendant, Boston Scientific Corporation, and remains in place today."[8] Plaintiff contends that following implantation of the second IPP (the "AMS 700"), the AMS 700 began inflating on its own, and failed to inflate and deflate when desired.[9] Per the Petition, Plaintiff alleges that the AMS 700 "is unreasonably dangerous" because:

> A. The characteristic that caused the IPP to spontaneously inflate and fail to inflate on command existed at the time the product left the control of its manufacturer, Boston Scientific Corporation, and only manifested after the IPP was implanted on December 21, 2016 and failed to function and/or operate in the intended manner during normal use; and
>
> B. The IPP does not conform to an express warranty made by the manufacturer about the product.[10]

Plaintiff contends that his damages were caused by Defendant's actions of "[p]lacing into commerce defectively manufactured equipment, which failed to function as it should have functioned;" "[f]ailing to properly inspect equipment and ascertain that it did not contain any defects;" and "[f]ailing to warn of a defect about which it knew or should have known."[11]

---

[6] R. Doc. 1-1, p. 9, ¶ 3.

[7] R. Doc. 1-1, pp. 9-10, ¶¶ 6-7.

[8] R. Doc. 1-1, p. 10, ¶ 8.

[9] R. Doc. 1-1, p. 10, ¶¶ 9-10.

[10] R. Doc. 1-1, p. 10, ¶ 11.

[11] R. Doc. 1-1, p. 10, ¶ 12(A)-(C).

2

On January 17, 2018, Defendant removed the case to this court on the basis of diversity jurisdiction.[12] On February 14, 2018, Defendant filed a Motion to Dismiss asserting that Plaintiff's products liability claims were expressly preempted by the Medical Device Amendments to the Federal Food, Drug and Cosmetics Act ("FFDCA"), 21 U.S.C. § 360k(a), and that Plaintiff's allegations failed to satisfy Rule 8 pleading standards.[13] In response to the Motion to Dismiss, Plaintiff filed an Opposition,[14] as well as the instant Motion to Amend.[15] Although Plaintiff contends that the allegations in his Petition are sufficient, Plaintiff has moved to amend his Petition to add the following additional allegations:

> The IPP implanted in petitioner, Michael Murphy, on December 21, 2016 is defective and unreasonably dangerous for the following reasons:
>
> A. Although the IPP may have initially functioned as intended, the characteristic that caused the IPP to spontaneously inflate and fail to inflate on command existed at the time the product left the control of its manufacturer, Boston Scientific Corporation, and only manifested after the IPP was implanted on December 21, 2016 and failed to function and/or operate in the intended manner during normal use in violation of FDA standards and in violation of the manufacturing processes and design approved by the FDA;
>
> B. The IPP inflates on its own without any action being taken by petitioner, notwithstanding proper reservoir placement and filling technique; and

---

[12] R. Doc. 1. On February 8, 2018, Plaintiff filed a Motion to Remand, arguing that Defendant had not met its burden of establishing that the amount in controversy required to exercise jurisdiction under 28 U.S.C. § 1332 was met. R. Doc. 8. On July 8, 2018, the undersigned issued a Report recommending that Plaintiff's Motion to Remand be denied. R. Doc. 29. The Motion to Remand is currently pending before the District Judge.

[13] R. Doc. 10.

[14] R. Doc. 19. On June 5, 2018, the District Judge issued an order dismissing Defendant's Motion to Dismiss without prejudice, subject to be refiled (if necessary) after the Court rules on the motion for leave to amend. R. Doc. 26.

[15] R. Doc. 18. Per his opposition to the Motion to Dismiss, Plaintiff asserted that he "believes that the facts contained in his original Petition for Damages are pleaded with enough clarity to enable this Court to determine that his claims are sufficiently alleged." R. Doc. 19, p. 6. Plaintiff further asserts that "[t]o the extent that plaintiff's complaint does not specify with sufficient clarity the precise defect or the precise federal regulatory requirements that were allegedly violated, plaintiff has asked for Leave to File an Amended Complaint, which, together with plaintiff's original complaint, certainly satisfies the liberal notice pleading of Federal Rules of Civil Procedure." R. Doc. 19, p. 6.

3

> C. The IPP fails to inflate and deflate when petitioner desires for same to inflate and deflate in contravention of an express and/or implied warranty made by the manufacturer about the product, which promises a firm, rigid erection which should last only as long as – and not longer than – desired.[16]

Plaintiff's proposed pleading (the "Amended Complaint") also seeks to amend Plaintiff's allegations regarding Defendant's acts of fault or negligence to assert that Defendant "[p]lac[ed] into commerce defectively manufactured equipment, which failed to function as it should have functioned and which violated FDA Standards;" "[f]ail[ed] to properly inspect equipment and ascertain that it did not contain any defects;" and "[f]ail[ed] to warn of a defect about which it knew or should have known in the [sic] light of reasonably available knowledge in violation of applicable FDA regulations requiring accurate reporting of serious injuries and malfunctions."[17] Finally, Plaintiff seeks to amend the paragraph of his Petition listing claimed damages to assert that his damages were caused by Defendant's failure "to adhere to Federal Pre-Market Approval Standards."[18]

As stated above, Defendant opposes the Motion to Amend as futile "because Plaintiff's state law tort claims are still expressly preempted."[19] Specifically, Defendant asserts that "[t]he fact that the AMS 700™ is a Class III medical device the FDA declared to have completed the PDP process is dispositive."[20] Defendant asserts that Plaintiff's claims are therefore expressly preempted and that Plaintiff has failed to sufficiently plead a parallel state law claim. Finally, Defendant asserts that "[b]eyond the insurmountable preemption issue, Plaintiff's proposed

---

[16] R. Doc. 18, pp. 1-2.

[17] R. Doc. 18, p. 2.

[18] R. Doc. 18, p. 2.

[19] R. Doc. 23, p. 2.

[20] R. Doc. 23, p. 2.

4

Amended Petition is futile because it otherwise falls far short of Rule 8 pleading standards" required to sufficiently state a claim pursuant to the Louisiana Product Liability Act (the "LPLA").[21]

## II.    Law and Analysis.

### A.  Rule 15 and Rule 12(b)(6) Legal Standards

Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend pleadings "shall be freely given when justice so requires."[22] The Federal Rules permit liberal amendment of pleadings, and Rule 15(a) favors granting leave to amend. However, "leave to amend is by no means automatic" and the "decision lies within the sound discretion of the district court."[23] A court should consider five factors to determine whether to grant a party leave to amend a complaint: (1) undue delay; (2) bad faith or dilatory motive; (3) repeated failure to cure deficiencies by previous amendments; (4) undue prejudice to the opposing party; and (5) futility of the amendment.[24] Absent any of these factors, the leave sought should be freely given.[25]

Regarding the fifth factor, an amendment is "futile" if it would fail to survive a Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted.[26] To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is

---

[21] R. Doc. 23, pp. 8-10.

[22] Fed. R. Civ. P. 15(a).

[23] *Parish v. Frazier*, 195 F.3d 761, 763 (5th Cir. 1999) (citations omitted).

[24] *Smith v. EMC Corp*, 393 F.3d 590, 595 (5th Cir. 2004) (*citing Foman v. Davis*, 371 U.S. 178, 182 (1962)).

[25] *Smith*, 393 F.3d at 595.

[26] *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014).

5

plausible on its face."[27] A claim is facially plausible when the plaintiff has pleaded facts that allow the court to "draw a reasonable inference that the defendant is liable for the misconduct alleged."[28]

On a motion to dismiss, asserted claims are liberally construed in favor of the claimant, and all facts pleaded are taken as true.[29] However, although required to accept all "well-pleaded facts" as true, a court is not required to accept legal conclusions as true.[30] From the face of the complaint, there must be enough factual matter to raise a reasonable expectation that discovery will reveal evidence as to each element of the asserted claims.[31] If factual allegations are insufficient to raise a right to relief above the speculative level, or if it is apparent from the face of the complaint that there is an "insuperable" bar to relief, the claim must be dismissed.[32] In deciding a Rule 12(b)(6) motion to dismiss, the court may consider "the complaint, its proper attachments, 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'"[33]

### B. The LPLA

"A federal court sitting in diversity applies the substantive laws of the forum state."[34] The LPLA "establishes the exclusive theories of liability for manufacturers for damage caused by their products. A claimant may not recover from a manufacturer for damage caused by a product on

---

[27] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[28] *Twombly*, 550 U.S. at 570.

[29] *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 322–323 (2007).

[30] *Ashcroft v. Iqbal,* 556 U.S. 662, 677-678 (2009).

[31] *Lormand v. U.S. Unwired, Inc*., 565 F.3d 228, 257 (5th Cir. 2009).

[32] *Moore v. Metro. Human Serv. Dep't*, No. 09-6470, 2010 WL 1462224, at * 2 (E.D. La. Apr. 8, 2010) *citing Jones v. Bock*, 549 U.S. 199, 215 (2007) (other citations omitted).

[33] *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011).

[34] *Learmonth v. Sears, Roebuck and Co.*, 710 F.3d 249, 258 (5th Cir. 2013) (citations omitted).

6

the basis of any theory of liability that is not set forth" in the LPLA.[35]  "To maintain a successful products liability action under the LPLA, a plaintiff must establish four elements: (1) that the defendant is a manufacturer of the product; (2) that the claimant's damage was proximately caused by a characteristic of the product; (3) that this characteristic made the product 'unreasonably dangerous'; and (4) that the claimant's damage arose from a reasonably anticipated use of the product by the claimant or someone else."[36]  "[T]he LPLA limits the plaintiff to four theories of recovery: manufacturing defect, design defect, inadequate labeling, and breach of express warranty."[37]  Here, although Plaintiff does not explicitly cite to the LPLA in his Petition or his proposed Amended Complaint, Plaintiff's claims that the AMS 700 was defectively manufactured or designed, was not properly inspected, that Defendant failed to warn Plaintiff regarding a defect, and that the AMS 700 failed to function as claimed by a warranty must arise (to the extent they are viable at all) under the LPLA.[38]  The undersigned considers Plaintiff's proposed pleading to potentially assert claims for inadequate labeling,[39] manufacturing and/or design defect,[40] and

---

[35] La. R.S. § 9:2800.52.  *See also*, *Scianneaux v. St. Jude Medical S.C., Inc.*, 961 F.Supp.2d 808, 811 (E.D. La. 2013) ("The Louisiana Products Liability Act ('LPLA') provides the exclusive remedy against a manufacturer for damages caused by its product.  A plaintiff may not recover under any theory of liability that is not set forth in the LPLA." (citing La. R.S. § 9:2800.52; *Stahl v. Novartis Pharmaceuticals Corp.*, 283 F.3d 254, 261 (5th Cir. 2002) ("for causes of action arising after the effective date of the LPLA, negligence, strict liability, and breach of express warranty are not available as theories of recovery against a manufacturer, independent from the LPLA.")).

[36] *Stahl*, 283 F.3d at 260-261 (citing La. R.S. § 9:2800.54).

[37] *Scianneaux*, 961 F.Supp.2d at 811.  *See also*, La. R.S. § 9:2800.54(B)(1)-(4); *Parra v. Coloplast Corp.*, Civil Action No. 16-14696, 2017 WL 24794, at * 2 (E.D. La. Jan. 3, 2017) ("Thus, the LPLA limits the plaintiff to four theories of recovery: construction/composition defect, design defect, inadequate warning, and breach of express warranty.").

[38] *See*, *Scianneaux*, 961 F.Supp.2d at 811-812 ("Plaintiff does not allege a violation of the LPLA.  Instead, she seeks relief based on general theories of breach of express and implied warranties, strict liability, fraud, and negligence….such freestanding theories of recovery are unavailable when the cause of action sounds in product liability.  As a result, plaintiff's claims fail as a matter of law to the extent that they seek relief outside the scope of the LPLA.").

[39] R. Doc. 18-1, ¶ 12(C).

[40] R. Doc. 18-1, ¶ 11(A) & ¶ 12(A).

7

breach of express warranty.[41] To the extent Plaintiff also seeks to assert a claim for breach of implied warranty,[42] such claim "is unavailable as a theory of recovery…"[43]

### C. Plaintiff's Proposed Amended Claims Are Preempted

"In response to the concern that state-law governance of medical devices was inadequate, Congress passed the MDA, giving the FDA authority to regulate medical devices and expressly preempting certain state regulations."[44] "Section 360k of the FFDCA prohibits states from establishing 'safety or effectiveness' standards that are 'different from, or in addition to' the requirements under the FFDCA."[45] "Section 360k preemption only applies to Class III devices approved through the Food and Drug Administration's…pre-market approval ("PMA") process"[46] "A state law tort claim to recover for injuries allegedly caused by a medical device is preempted if two requirements are met: (1) the Federal Government has established requirements applicable to [the device]; and (2) the claims are based on state law requirements that are different from, or in addition to the federal ones, and that relate to safety and effectiveness."[47]

---

[41] R. Doc. 18-1, ¶ 11(C).

[42] *See*, R. Doc. 18-1, ¶ 11(C).

[43] *Parra*, 2017 WL 24794, at * 2 (collecting cases). *See also*, *Pierre v. Medtronic, Inc.*, Civil Action No. 17-12196, 2018 WL 1911829, at * 5 (E.D. La. April 23, 2018) ("Plaintiff's remaining claims for breach of warranty of fitness for ordinary use, negligence, breach of implied warranty, negligent misrepresentation, and negligent design are precluded by the LPLA."); *Cooper v. Wyeth, Inc.*, Civil Action No. 09-929, 2010 WL 2653321, at * 2 (M.D. La. June 25, 2010) ("Defendant moves to dismiss plaintiff's products liability claims based upon Louisiana Unfair Trade Practices and Consumer Protection Law, fraud, negligence, negligent misrepresentation, misrepresentation, and breach of implied warranty because such claims are outside the permissible scope of the LPLA. The Court finds that these claims do not fall into one of the four categories recognized by the LPLA, and thus, the Court dismisses these claims pursuant to Rule 12(b)(6) because they do not state a cognizable action under Louisiana law.").

[44] *Bass v. Stryker Corp.*, 669 F.3d 501, 506 (5th Cir. 2012) (citing *Riegel v. Medtronic, Inc.*, 552 U.S. 312, 321-322 (2008); 21 U.S.C. § 360k)).

[45] *Funk v. Stryker Corp.*, 631 F.3d 777, 779 (5th Cir. 2011) (citing 21 U.S.C. § 360k).

[46] *Funk*, 631 F.3d at 789.

[47] *Bass*, 669 F.3d at 507 (internal quotation marks omitted) (quoting *Riegel*, 552 U.S. at 321–22).

8

The parties agree that the AMS 700 is a Class III medical device that has completed the Product Development Protocol ("PDP") process.[48]  "PDP completion is equivalent to PMA approval, and if a device is PMA-approved or has received a declaration of PDP completion, then the first prong of the preemption analysis is satisfied."[49]  In his proposed Amended Petition, Plaintiff alleges that the AMS 700 is "defective and unreasonably dangerous…."[50]  To the extent Plaintiff is asserting that the design, manufacturing, and/or labeling of the AMS 700 is not reasonably safe and effective, such claim "is directly contrary to the FDA's declaration of PDP completion, which is premised upon a finding by the FDA that the Penile Prosthesis is, in fact, reasonably safe, effective, and appropriately labeled."[51]  To allow such a claim "'would impliedly require more of Defendant that what the FDA already required.'  Accordingly, such requirements

---

[48] In its Memorandum in Support of the Motion to Dismiss, Defendant asserted that the AMS 700 is "an FDA-approved Class III medical device" and that "[i]t is a matter of public record that the FDA declared the AMS 700™ to have completed the Product Development Protocol process ('PDP')…." R. Doc. 10-1, pp. 1 & 3.  In his opposition to the Motion to Dismiss, Plaintiff agreed that the AMS 700 is a Class III medical device, R. Doc. 19, p. 3, and noted that "[t]he IPP at issue herein has not obtained premarket approval but instead has completed the PDP process." R. Doc. 19, p. 4, n. 18. *See also*, *Rodriguez v. American Medical Systems, Inc.*, 597 Fed. Appx. 226, 228-229 (5th Cir. 2014) (explaining that AMS 700 penile implant "is a Class III medical device under federal law" and that device had been approved through the PDP process); *Malbroux v. Jancuska*, No. 11-421, 2011 WL 3816104, at * 2, n. 23  (W.D. La. Aug. 29, 2011) (taking judicial notice of fact that AMS penile prosthesis received a declaration of PDP completion); *Callaway v. American Medical Systems, Inc.*, Civil Action No. 11-193, 2011 WL 7724268, at * 2 (W.D. La. Dec. 8, 2011) (explaining that AMS 700 MS Series Penile Prosthesis is a Class III medical device which received a declaration of PDP completion).

[49] *Callaway*, 2011 WL 7724268, at * 2 ("On November 2, 1998, the penile prosthesis at issue received a declaration of PDP completion.  The conditions of PDP approval govern AMS's design, manufacturing, and labeling of the device.  Therefore, through the PDP process, the FDA has established federal 'requirements' that apply specifically to the penile prosthesis at issue in this case.  Hence, the first prong of the *Riegel* preemption analysis is satisfied."). *See also*, *Rodriguez*, 597 Fed. Appx. 226, 229 (assuming "that a device which has been approved through the PDP process meets the federal requirements prong of the preemption analysis."); *Malbroux*, 2011 WL 3816104, at * 2 ("PDP completion is equivalent to PMA approval, thus, if a device is PMA-approved or has received a declaration of PDP completion, then the first prong of the preemption analysis is satisfied.").

[50] R. Doc. 18-1, ¶ 11.

[51] *Malbroux*, 2011 WL 3816104, at * 3.

9

would be 'different from' or 'in addition to' those set forth by the FDA and as such, is in violation of § 360k(a)."[52] Such a claim is "preempted by federal law and must be dismissed."[53]

### D. Plaintiff's Proposed Amended Complaint Fails To Adequately Allege a Non-Preempted Parallel Claim

"Still, however, § 360 allows "parallel" state actions—state law claims that are based on federal regulations."[54] A plaintiff may assert a parallel claim "[t]o the extent a plaintiff can show that the FDA-approved processes and procedures were not followed, and that the injury was caused by this deviation…."[55] "[I]f a plaintiff pleads that a manufacturer of a Class III medical device failed to comply with either the specific processes and procedures that were approved by the FDA or the CGMPs themselves *and* that this failure caused the injury, the plaintiff will have pleaded a parallel claim."[56] As one District Court recently explained:

> The MDA expressly preempts state law claims against manufacturers when the effect is to establish "safety or effectiveness" standards that are "different from, or in addition to" the requirements for pre-market approved products under the FFDCA. Therefore, to the extent that state law claims impose duties on Class III PMA devices that are different or in addition to the requirements set forth by the FDA, they are necessarily preempted.

---

[52] *Id*. (quoting *Cowen v. American Medical Systems, Inc.*, No. 05-10307, 2006 WL 3542704, at * 2 (E.D. Mich. Dec. 7, 2006)).

[53] *Id*. (while the *Malbroux* court dismissed with prejudice plaintiff's claims that the IPP was defective because it never worked properly based on federal preemption, it does not appear that any argument was raised regarding the possibility of pleading a non-preempted parallel claim). *See also*, *Gomez v. St. Jude Medical Daig Div., Inc.*, 442 F.3d 919, 930 & 931 (5th Cir. 2006) ("To permit a jury to second-guess the Angio–Seal design by applying the Louisiana statutory standard for unreasonably dangerous design would risk interference with the federally-approved design standards and criteria. The district court judge correctly found that federal law preempted this state-law challenge to the design of the Class III FDA-approved Angio–Seal" and also finding that plaintiff's failure to warn claim was similarly preempted).

[54] *Funk*, 631 F.3d at 779.

[55] *Bass*, 669 F.3d at 512.

[56] *Bass*, 669 F.3d at 512. Neither party has asserted that "Current Good Manufacturing Practices," or "CGMPs" are at issue here.

10

> However, "parallel" state actions—state law claims that are premised on violations of FDA regulations—are permitted.[57]

"Plaintiff[], therefore, may bring a claim under the LPLA only if [he] can show that it was a violation of FDA regulations that rendered the [AMS 700] 'unreasonably dangerous.'"[58] Plaintiff's allegations that the AMS 700 violated FDA regulations must satisfy the pleading requirements of *Twombly*.[59] The Supreme Court has explained that:

> [w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.[60]

"[S]omething beyond the mere possibility of [a claim] must be alleged" and "a district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed [to discovery]."[61] "Gone are the days when a plaintiff could assert 'a wholly conclusory statement of claim' and survive a motion to dismiss simply because his 'pleadings left open the possibility that [he] might later establish some set of undisclosed facts to support recovery.'"[62]

---

[57] *Parra*, 2017 WL 24794, at * 3 (internal citations omitted). *See also*, *Rodriguez*, 597 Fed. Appx. at 229 ("Because the PDP approval establishes that there are federal requirements applicable to the implant, Rodriguez's claims survive preemption only if his state claims parallel the federal requirements.").

[58] *Parra*, 2017 WL 24794, at * 3 (citing *Scianneaux*, 961 F.Supp.2d at 812).

[59] *Id*. *See also*, *Bass*, 669 F.3d at 509 (explaining that the Fifth Circuit's holding in *Funk* (*i.e.*, that plaintiff's parallel claim was impermissibly conclusory and vague) "was consistent with a number of other courts holding that to plead a parallel claim successfully, a plaintiff's allegations that the manufacturer violated FDA regulations must meet the *Twombly* plausibility standard."). In opposition to Defendant's Motion to Dismiss, Plaintiff relied on *Bausch v. Stryker Corp.*, 630 F.3d 546 (7th Cir. 2010). *See*, R. Doc. 19, p. 6. As explained by the Fifth Circuit, the *Bausch* court acknowledged "that *Twombly* applies" but rejected "the notion that *Twombly* requires the plaintiff to allege which specific regulation was violated." *Bass*, 669 F.3d at 509. As discussed herein, the Fifth Circuit *does* require such specificity.

[60] *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).

[61] *Id*. at 557–58.

[62] *Callaway*, 2011 WL 7724268, at * 4 (citing *Twombly*, 550 U.S. at 561-562).

### 1. Plaintiff Has Not Adequately Alleged a Non-Preempted Claim Under the LPLA for Design Defect, Manufacturing Defect, or Inadequate Labeling

In order to sufficiently plead a parallel claim, "the plaintiff must at least 'specif[y] with particularity what went wrong in the manufacturing process and cite[ ] the relevant FDA manufacturing standards [the defendant] allegedly violated.'"[63] In *Bass v. Stryker Corp.*, *supra*, the Fifth Circuit found that the plaintiff had sufficiently pled a parallel claim "where the complaint specified which FDA regulations were violated in the manufacturing process, alleged that the manufacturer had received a warning letter from the FDA regarding the manufacturing defect, and eventually recalled the implant due to the defect."[64] In contrast, the Fifth Circuit found a plaintiff's claims to be too conclusory where the "complaint did not specify the manufacturing defect, did not specify a causal connection between a failure of the manufacturing process and a specific defect in the process that caused the personal injury, and did not specify how the process deviated from the FDA approved manufacturing process."[65]

Here, Plaintiff's proposed Amended Complaint does not specify which "FDA standards" with respect to the manufacturing, design, or labeling of the AMS 700 were allegedly violated. While Plaintiff makes conclusory allegations that the AMS 700 "failed to function and/or operate in the intended manner during normal use in violation of FDA standards and in violation of the

---

[63] *Parra*, 2017 WL 24794, at * 3 (citing *Bass*, 669 F.3d at 510 & *Funk*, 631 F.3d at 782).

[64] *Rodriguez*, 597 Fed. Appx. at 230 (describing the holding of *Bass*).

[65] *Id.* (explaining the holding of *Funk*). *See*, *Funk*, 631 F.3d at 782 ("This complaint is impermissibly conclusory and vague; it does not specify the manufacturing defect; nor does it specify a causal connection between the failure of the specific manufacturing process and the specific defect in the process that caused the personal injury. Nor does the complaint tell us how the manufacturing process failed, or how it deviated from the FDA approved manufacturing process."); *Scianneaux*, 961 F.Supp.2d at 812 (granting motion to dismiss where plaintiff "alleged only that St. Jude 'deviated from FDA requirements' and 'failed to comply with the FDA approved specifications for the device'" and did not "identify which FDA regulations were violated or explain how the design, manufacture, or sale of the device deviated from FDA requirements.").

manufacturing processes and design approved by the FDA,"[66] Plaintiff "fails to allege a specific defect in the manufacturing process or design, any deviation from the FDA-approved design or manufacturing processes, or any causal connection between a violation of federal requirements and his injuries."[67] Similarly, the proposed Amended Complaint fails to set forth the "approved FDA warnings and contains no allegations that defendant has deviated from these accepted warnings and instructions in any manner."[68] With respect to Plaintiff's proposed claims stemming from manufacturing and/or design defect and inadequate labeling, the undersigned finds that Plaintiff's proposed Amended Complaint fails to meet the standard for pleading a parallel claim.

> **2. Likewise, Plaintiff's Proposed Pleading Fails to Adequately Allege a Non-Preempted Claim for Breach of Express Warranty**

With respect to Plaintiff's claim for breach of an express warranty, the Fifth Circuit has noted that express warranties which "'arise from the representations of the parties and are made as the basis of the bargain between them' may 'not necessarily interfere with the operation of the PMA, and therefore' may not be preempted."[69] "But if the warranty at issue contradicts the FDA's requirements, or the warranty is intertwined with the FDA's standards, the claim will be preempted."[70] Here, Plaintiff's proposed Amended Complaint includes the conclusory statement that the IPP failed to inflate and deflate "in contravention of an express and/or implied warranty made by the manufacturer about the product, which promises a firm, rigid erection which should

---

[66] R. Doc. 18-1, ¶ 11(A). Similarly, Plaintiff's proposed Amended Petition asserts that Defendant placed into commerce "defectively manufactured equipment…which violated FDA Standards," failed to warn of a defect "in violation of applicable FDA regulations requiring accurate reporting of serious injuries and malfunctions," and failed "to adhere to Federal Pre-Market Approval Standards." R. Doc. 18-1, ¶ 12(A), ¶ 12(C), & ¶ 13.

[67] *Rodriguez*, 597 Fed. Appx. at 230.

[68] *Parra*, 2017 WL 24794, at * 4.

[69] *Gomez v. St. Jude Medical Daig. Div. Inc.*, 442 F.3d 919, 932 (5th Cir. 2006) (quoting *Mitchell v. Collagen Corp.*, 126 F.3d 902, 915 (7th Cir. 1997)).

[70] *Parra*, 2017 WL 24794, at * 4 (internal citations omitted).

13

last only as long as – and not longer than – desired."[71]  While it is not clear that Plaintiff could allege a non-preempted parallel claim for breach of an express warranty claim,[72] it is clear that Plaintiff's conclusory assertion is insufficient to allege such a claim under *Twombly*.

### E. Plaintiff Should Not Be Permitted Another Opportunity to Amend

It is clear that amendments to pleadings, particularly when early in proceedings, should generally be permitted.[73]  Here, however, Plaintiff already has had one opportunity to amend his pleadings to adequately state a non-preempted parallel claim.  As discussed above, Plaintiff's proposed Amended Complaint fails to do so and therefore allowing the amendment would be futile.  District courts, in the context of motions to dismiss, have dismissed similarly deficient allegations with prejudice where a plaintiff has already been given one opportunity to amend.[74]

---

[71] R. Doc. 18-1, ¶ 11(C).  In order to establish a breach of express warranty claim under the LPLA, "a plaintiff must show that (1) there was an express warranty made by the manufacturer about the product; (2) the express warranty induced the plaintiff to use the product; and (3) the plaintiff's damage was proximately caused because the express warranty was untrue." *Parra*, 2017 WL 24794, at * 4 (citing La. R.S. § 9:2800.58 & *Caboni v. General Motors Corp.*, 278 F.3d 448, 452 (5th Cir. 2002)).  Plaintiff's proposed Amended Complaint alleges that an "express and/or implied warranty" was made promising "a firm, rigid erection…." R. Doc. 18-1, ¶ 11(C).  Accordingly, it is not even clear whether this is the alleged "express warranty" which Plaintiff contends was breached; however, there is no other warranty alleged in either the Petition or the proposed Amended Complaint.

[72] The undersigned has significant doubts that Plaintiff can allege a non-preempted breach of express warranty claim and notes that stating a viable claim for breach of express warranty is especially difficult given the additional element of that claim required by the LPLA (*i.e.*, that the express warranty was untrue). *See*, *Gomez*, 442 F.3d at 932 (explaining that La. R.S. § 9:2800.58 "goes beyond merely enforcing the federal requirements. The last part of the Louisiana provision requires proof that 'the express warranty was untrue.' A jury hearing Gomez's state-law breach of express warranty claim would have to decide whether Kendall's representations about the Angio–Seal were true. Because those representations—including the label, warnings, and IFU—were approved by the FDA through the PMA process, the duties arising under the Louisiana breach of warranty statute relate to, and are potentially inconsistent with, the federal regulatory scheme. The claim is preempted."). *See also*, *Godfrey v. Advanced Neuromodulation Systems, Inc.*, No. 2:10CV67, 2011 WL 7768092, at * 8 (W.D. La. April 4, 2011) ("an LPLA claim for breach of an express warranty is preempted.").

[73] Fed. R. Civ. P. 15(a) (leave to amend should be "freely give[n]…when justice so requires."); *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) ("In view of the consequences of dismissal on the complaint alone, and the pull to decide cases on the merits rather than on the sufficiency of pleadings, district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal."); *Story v. Our Lady of the Lake Physician Group*, Civil Action No. 17-651, 2018 WL 1902687, at * 8 (M.D. La. April 20, 2018) (same)).

[74] *See*, *Scianneaux*, 961 F.Supp.2d 808, 810 & 814 (E.D. La. 2013) (granting motion to dismiss with prejudice where plaintiff sought damages allegedly related to a defective defibrillator and plaintiff's Amended Complaint added conclusory allegations that defendant "(1) failed to comply with FDA-approved specification for the device; (2) failed

Plaintiff filed his proposed Amended Complaint in response to (and therefore following his review of) Defendant's Motion to Dismiss.[75] The District Judge dismissed Defendant's Motion to Dismiss without prejudice to the refiling (if necessary) after the Court rules on the instant Motion to Amend.[76] Although Defendant argued in its Motion to Dismiss that Plaintiff failed to alleged sufficient facts related to Defendant's conduct or the AMS 700 itself, Plaintiff fails to provide additional factual information in his proposed Amended Complaint and instead only adds conclusory allegations regarding violations of FDA standards and regulations. While Plaintiff argued his original Petition was "sufficiently alleged," he also contends that the allegations in his

---

to manufacture the device in compliance with FDA specifications; and (3) deviated from FDA requirements in connection with the sale of the device" and explaining that "[b]ecause plaintiff has already been given one opportunity to amend and continues to provide nothing more than conclusory allegations, the complaint must be dismissed with prejudice."); *Parra*, 2017 WL 24794, at * 5 (dismissing plaintiff's petition with prejudice where plaintiff alleged an inflatable penile prosthesis was defective and unreasonably dangerous but failed to allege the relevant FDA manufacturing standards that were allegedly violated or the FDA warnings from which defendant deviated "[b]ecause plaintiffs have already had one opportunity to amend their petition and continue to provide nothing more than conclusory allegations…."). *See also*, *Story*, 2018 WL 1902687, at * 9 ("The operative pleading in this action is an Amended Complaint. (Doc. 19). Notably, the Amended Complaint was filed after and in apparent partial response to an earlier Motion to Dismiss raising the same deficiencies addressed in the instant Motion. (See Doc. 17-1 at 7-8, 10-12). Plaintiff has therefore had an opportunity to address these deficiencies but has not satisfactorily done so. Plaintiff's pleadings and Opposition also do not suggest that there may be additional facts available that could render the claims at issue in the Motion meritorious. *See Jebaco, Inc. v. Harrah's Operating Co.*, 587 F.3d 314, 322 (5th Cir. 2009) (leave to amend may properly be denied where amendment would be futile). In light of the foregoing facts and legal authorities, the Court concludes that granting leave to amend is unwarranted.").

[75] Although the LPLA providing the exclusive remedy for Plaintiff's proposed claims, and despite the fact Defendant provided relevant citation to the LPLA's exclusivity provision in its Motion to Dismiss, R. Doc. 10-1, p. 2, Plaintiff fails to reference the LPLA at all in his proposed Amended Complaint. As discussed above, the undersigned has assumed (giving the Plaintiff the benefit of the doubt) that Plaintiff intended to assert claims within the LPLA. Moreover, while Defendant's Motion to Dismiss provided citation to, *inter alia*, *Rodriguez v. American Medical Systems, Inc.*, 597 Fed. Appx. 226 (5th Cir. 2014), a case in which the Fifth Circuit clearly set out the two poles for adequate and inadequate pleading of a non-preempted parallel claim for damages due to the AMS 700, Plaintiff failed to address the pleading standards set forth by the Fifth Circuit. Instead, as noted above, Plaintiff cited the Seventh Circuit case of *Bausch v. Stryker Corp.*, for the proposition that "much of the critical information on which claims such as plaintiff's are based is kept confidential as a matter of federal law" (and presumably no further specificity regarding Plaintiff's claims was possible). R. Doc. 19, p. 6. Regardless of the pleading standard set forth in the Seventh Circuit, the Fifth Circuit *does* require plaintiff to allege which specific regulation was violated. *See*, n. 58, *supra*.

[76] R. Doc. 26.

15

proposed Amended Complaint "set forth in greater detail and with as much specificity as possible without formal discovery how his damages were caused by the faulty IPP…."[77]

Here, Plaintiff has been already given one opportunity to attempt to amend his claims and Plaintiff has asserted that his proposed Amended Complaint sets forth his claims with as much specificity as possible. Under those facts, the undersigned recommends, if the Report is adopted and Plaintiff's Motion to Amend is denied as futile, that Plaintiff not be afforded additional time to file another motion for leave to further amend his Petition.

### F. Conclusion

The undersigned finds that Plaintiff's proposed Amended Complaint fails to adequately allege a non-preempted parallel claim and therefore RECOMMENDS that the Motion for Leave of Court to File First Supplemental and Amending Petition for Damages filed by plaintiff, Michael Murphy[78] be **DENIED** as futile. The undersigned further RECOMMENDS that the court decline to allow Plaintiff any additional opportunity to amend his Petition.

Signed in Baton Rouge, Louisiana, on July 12, 2018.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[77] R. Doc. 19, p. 7.

[78] R. Doc. 18.